THE CENTRAL BRANCH UNION PACIFIC RAILROAD COMPANY v. R. S. ANDREWS.

WITNESS *as to Damages; Cross-Examination, Error in Restricting.* From sometime prior to August 1, 1877, up to the present time, the plaintiff has owned six lots in the northwest corner of block 23, in the city of Atchison, Kansas. In front and at the north end of these lots is Main street, running east and west; on the west side of these lots is Tenth street, running north and south; and on the south end of these lots is an alley 15 feet wide, running east and west. Each of these lots is 25 feet wide east and west, by 130 feet long north and south, and extends from Main street on the north to the alley on the south. These six lots compose a single tract of land 130 feet in extent north and south, and 150 feet in extent east and west. About August 1, 1877, the defendant, the Central Branch Union Pacific railroad company, under the authority of the city of Atchison, which has at all times had full and complete authority from the legislature of the state of Kansas, constructed a railroad track through the alley south of the plaintiff's lots. The construction of this railroad track and the running of cars thereon have entirely destroyed the use of the alley as an alley, and have rendered it useful only for railroad purposes. On September 13, 1878, the plaintiff commenced an action against the railroad company to recover damages for the alleged permanent destruction of the alley as an alley. A trial was had before the court and a jury. On the trial, the plaintiff was examined as a witness in his own behalf, and upon his examination-in-chief he testified among other things that he was acquainted with the value of real property in the vicinity of his lots at the time when said railroad track was constructed in the alley, and that it was his opinion that immediately before said railroad track was constructed his property was worth $10,000, and that immediately afterward it was worth only $6,000, and that the depreciation of the value of his property by reason of the construction of said railroad track in the alley was $4,000. Afterward, upon the cross-examination of the plaintiff by counsel for the defendant, he was asked the following questions:

"What would be the value of a strip of ground fifteen feet wide, taken from the south end of these lots (around on the east end) out to Main street; beginning at Tenth street, take a strip fifteen feet wide off; then again from the south, north on the east side out to Main street?"

"What, in your opinion, would be the depreciation in the value of the remaining property, as an entirety, by reason of the taking from them fifteen feet off of the south end of the lots and fifteen feet off the side of the property to Main street?"

These questions were each objected to by the plaintiff, and the court below sustained the objection, and the evidence was excluded. Upon the foregoing opinion, evidence of the plaintiff and other evidence of a

similar character, though differing in the amounts specified, the jury found a verdict in favor of the plaintiff and against the defendant, and assessed the damages at $2,000. The jury found that the plaintiff's property, without the alley, was worth $5,000, and with the alley, $7,000. *Held,* Under the circumstances of this case, that great latitude should have been allowed in the cross-examination of witnesses that gave evidence merely as to their opinions with respect to values and damages, and that the court below erred in restricting the cross-examination of the plaintiff as a witness; that the plaintiff was not entitled to recover damages for the loss of the fee of the alley, for the fee never belonged to him; that he was not entitled to recover for the imposition of any additional burden upon the fee, for a like reason; that he was not entitled to recover for the loss of any general benefits which he was entitled to receive, or had previously received, in common with the public generally, or in common with all other persons in that community; but he was in fact entitled to recover damages only for the loss of his special easement — for the loss of his special right to pass and repass over the alley to and from the south end of his premises.

## *Error from Atchison District Court.*

AT the November Term, 1882, plaintiff *Andrews* recovered a judgment for $2,000 damages, and costs, against the defendant *Railroad Company,* which brings this judgment here for review. The opinion states the case.

*Everest & Waggener,* for plaintiff in error.

*Hudson & Tufts,* for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: This case has once before been to this court. (*C. B. U. P. Rld. Co. v. Andrews,* 26 Kas. 702.) After its return to the district court, another trial was had before the court and a jury, and a judgment was rendered in favor of the plaintiff below, defendant in error, and against the defendant below, plaintiff in error, for $2,000 damages, and costs. That errors were committed during the last trial, we think the record clearly shows; but whether any one of such errors was prejudicial to any of the defendant's substantial rights, we think is at least doubtful. That the plaintiff below, defendant in error, was entitled to recover, we think there can be no doubt; but as to what the amount of the re-

covery should be, there is great room for doubt. Therefore with reference to all alleged errors relating merely to the plaintiff's right to recover, we shall say nothing, as we do not think it is necessary. But with reference to such of the alleged errors as may seem to have affected the question of damages, we shall give full attention and consideration.

From sometime prior to August 1, 1877, up to the present time, the plaintiff Andrews has owned six lots in the northwest corner of block 23, in the city of Atchison. In front and at the north end of these lots is Main street, running east and west. On the west side of these lots is Tenth street, running north and south. And on the south end of these lots is an alley fifteen feet wide, running east and west. Each of these lots is 25 feet wide east and west, by 130 feet long north and south, and extends from Main street on the north to the alley on the south. These six lots compose a single tract of land 130 feet in extent north and south, and 150 feet in extent east and west. About August 1, 1877, the defendant, the Central Branch Union Pacific railroad company, under the authority of the city of Atchison, which has at all times had full and complete authority from the legislature of the state of Kansas, constructed a railroad track through the alley south of the plaintiff's lots. The construction of this railroad track, and the running of cars thereon, has entirely destroyed the use of the alley as an alley, and has rendered it useful only for railroad purposes. On September 13, 1878, the plaintiff Andrews commenced this action against the defendant railroad company, to recover damages for said destruction of the alley as an alley. The plaintiff claimed that the destruction of the alley was permanent, and that the use of the same by the railroad company was a permanent appropriation by the railroad company of the alley for railroad purposes. The action, then, is in the nature of a condemnation proceeding to recover damages from the railroad company for the permanent taking and appropriation by the railroad company of the plaintiff's property in the alley. The question then arises: What property has the plain-

tiff in the alley? Under the laws of Kansas, the fee of the alley is in the county of Atchison, in trust for the use of the public generally as an alley; and the city of Atchison has the entire control over the same, and may permit it to be used for railroad purposes, along with its other uses, if it deems such use beneficial to the interests of the public; and the city of Atchison in the present case has in fact authorized the present railroad company to construct the said railroad track through the alley, as the railroad company in fact did about August 1, 1877. The railroad company has also, before that time and since, constructed a large number of other railroad tracks—ten or more, immediately south of the alley. The plaintiff does not now and never did own the fee in the alley, nor any interest therein, except such as he may possess by virtue of the alley being an alley, and by virtue of his owning the said six lots adjacent thereto. Then what is his interest in the alley, and for what may he recover damages? (1.) He has the general right, in common with all other persons, to travel upon and use the alley as an alley. (2.) He has the peculiar and special right, in connection with his said six lots, to use the alley as a means of ingress to and egress from his lots. (3.) He may also have a special right, in connection with his lots, to light and air from the alley; but as this supposed right has never been invaded or infringed, we think it is wholly unnecessary to express any opinion with reference thereto. For the purposes of the case, we shall assume that the plaintiff has a right to light and air from the alley, but as to what we should decide if the question were really before us, we shall express no opinion. The plaintiff therefore cannot recover for the taking of the fee of the alley, for the fee never belonged to him. He cannot recover for the imposition of an additional burden upon the fee, for a like reason. And he cannot recover merely because the railroad track is located in the alley, for it is located there according to law and by the express authority of the city of Atchison. (*Atchison & Nebraska Rld. Co. v. Garside*, 10 Kas. 552.)

This, then, leaves only the two rights above mentioned for

38—30 KAS.

the loss of which the plaintiff may recover, to wit: (1) The plaintiff's general right, which he possesses in common with all other persons, to travel upon and use the alley as an alley ; (2) his special right to use the alley in passing and repassing over the alley in going to and from his lots.   But may he re-cover for the loss of both of these rights?   As to the second, he may ; but as to the first, we think he cannot.   We know of no authorities directly in point upon this subject, but the entire analogies of the law are against his recovery for the loss of the first-mentioned right.   Injunction will not lie to restrain the vacation of a street in favor of a lot-owner who has no special interest in the street, but only a general inter-est in common with the rest of the community. (*Heller v. A. T. & S. F. Rld. Co.*, 28 Kas. 625.)   And in the location and establishment of public highways under the right of eminent domain, damages suffered by the land-owner cannot be dimin-ished by any general benefits which he may receive in com-mon with the rest of the community. (*Trosper v. Comm'rs of Saline Co.*, 27 Kas. 291, *et seq.*, and cases there cited ; *Comm'rs of Pottawatomie Co. v. O'Sullivan*, 17 id. 58 ; *Tobie v. Comm'rs of Brown Co.*, 20 id. 14 ; *Roberts v. Comm'rs of Brown Co.*, 21 id. 247, 252, and cases there cited.)   And in general no action can be maintained by any person who has no interest in the subject-matter of the action different from that possessed by the rest of the community.   (See the cases cited in the case of *A. T. & S. F. Rld. Co. v. The State*, 22 Kas. 13.)   We must therefore hold, under the foregoing au-thorities and general analogies of the law, that the plaintiff cannot recover for the loss of any benefits which he may be entitled to receive from the use of the alley in common with the rest of the community.   Or, in other words, he cannot recover for the loss of that general right, which he possesses in common with all other persons, to travel upon and use the alley as a public thoroughfare.   See also upon this question, *Gottschalk v. C. B. & Q. Rld. Co.*, decided by the supreme court of Nebraska, August, 1883, 16 Reporter, 402.

This brings us to the consideration of the plaintiff's right

to recover for the loss of his special right to use the alley as a means of ingress to and egress from his lots; and for this loss the plaintiff may undoubtedly recover. It is true that the public, in grading the alley or in permitting a railroad company to occupy it, may in some cases render its use less convenient and still not give the plaintiff any right of action against any person or corporation for damages. Thus the public may grade the alley so that it would be much above the surface of the plaintiff's lots, or much below it, and so that it would be very inconvenient for the plaintiff or others to pass from the one to the other; or the public might vacate a street at one end of the alley, so that the plaintiff could pass into the alley only at the other end; or might in other ways vacate streets or alleys so as to render the plaintiff's property less enjoyable, without giving to the plaintiff a cause of action. (*Heller v. A. T. & S. F. Rld. Co.*, 28 Kas. 630, and cases there cited; *Coster v. The Mayor*, 43 N. Y. 399; *Kellinger v. Forty-second Street &c. Rld. Co.*, 50 id. 206; *Fearing v. Irwin*, 55 id. 486.)

But the public cannot authorize a railroad company to wholly block up or obstruct an alley, so as to wholly deprive the plaintiff of his right to pass over the alley to and from his lots, without at the same time leaving the plaintiff at liberty to recover full and complete damages for any special loss which he may sustain by reason of such blocking-up or obstruction. (*A. & N. Rld. Co. v. Garside*, 10 Kas. 552; *C. B. U. P. Rld. Co. v. Twine*, 23 id. 585; *C. B. U. P. Rld. Co. v. Andrews*, 26 id. 702; *Story v. N. Y. El. Rld. Co.*, 90 N. Y. 122; same case, 7 Am. & Eng. Rld. Cases, 596, and note, 623, *et seq.*) The plaintiff's right to the alley is in the nature of an easement — a private right-of-way over land which does not belong to him but belongs to another; and when he recovers damages for the destruction of such right-of-way he will recover in the same manner, and to the same extent, as though he had sued the owner of the land for the destruction of his right-of-way; and the measure of his damages will not be the value of the land, nor the value of its entire use, but

merely the value of his own right-of-way over the land. Is this right-of-way the only thing for which the plaintiff recovered damages in the present action? Counsel for the defendant say not. They claim that the plaintiff recovered for the entire property in the alley, fee and all, and this would almost seem to be true from some portions at least of the record. The jury found that the plaintiff's lots, without the alley, were worth $5,000, and with the alley $7,000, and therefore awarded the plaintiff $2,000 damages for the loss of the alley; that is, they valued the plaintiff's right to the alley at $2,000, two-fifths of the value of his lots, while the alley south of the plaintiff's lots contained less than two-sixteenths as much ground as the plaintiff's lots, and the entire alley, from one street to the other contains but little more than two-fifths as much ground as the plaintiff's lots. The alley in that block is 525 feet long and 15 feet wide, and the block contains 42 lots, all abutting on the alley; and if the destruction of the alley as an alley damages all the lots in the same proportion as the jury find that the plaintiff's lots were damaged, it would make the alley, or rather the combined easements of the various lot-owners, worth $14,000, nearly three times as much as the plaintiff's lots were worth, without the alley, although the plaintiff's lots contain considerably more than twice as much ground as the alley does; and yet all the lot-owners taken together do not own the alley. The fee of the alley is still in the public, and the general public has a large interest in it for the purposes of general travel and use as an alley, and the lot-owners possess merely an easement in the alley. It must also be remembered that the plaintiff has complete and unobstructed access to his lots by means of streets on the north end and the west side of his lots, and the alley gives him access to his lots only at the south end thereof. Now, how can so little a thing as this be of such great value? On the other hand, the opinions of many of the witnesses as to the value of the plaintiff's lots with the alley obstructed as it was, and the value of the plaintiff's lots without the alley

being obstructed, would sustain the findings of the jury with reference to damages.  Indeed, the plaintiff himself testified on the trial that the difference between the value of his lots with the railroad track in the alley and the value of his lots without the railroad track in the alley would be $4,000; or, in other words, that the depreciation of the value of his lots by reason of the construction of the railroad track in the alley was $4,000.

Counsel for the defendant also claim that the damages sustained by the plaintiff should have been diminished to the extent of the benefits received by him.  Now it was not shown that the plaintiff has received any *special* benefits, and, as we have already stated, no general benefits enjoyed by the plaintiff in common with all other persons in that community can be considered for the purpose of reducing the special damages which he has suffered.  It may be conceded that the improvements made by the railroad company have enhanced the value of the plaintiff's property more than they have injured it; but, still, if the benefits were general and indirect, and the damages special, direct and personal, the plaintiff is entitled to recover the damages, without any diminution on account of the benefits received.  And indeed, general benefits or damages received or suffered, in common with all the rest of the community, are generally too speculative and remote to be taken into consideration for the purpose of reducing or enhancing the plaintiff's damages. (See authorities above cited.)  But even if the plaintiff had received *special* benefits by reason of the construction of said railroad track in the alley, could even they be set off against the plaintiff's damages? (Const., art. 12, § 4.)

We now come to the question: Was there any such error committed during the trial of this case as will require a reversal of the judgment of the court below?  That the damages awarded by the jury are excessive, we think must be conceded; but are they so clearly excessive as to show passion, or prejudice, or a legal mistake in the mode of their computation? or is there anything else in the record that

clearly shows that they were computed on a wrong basis? or was there any legal error committed by the court below which might reasonably have produced this excessive verdict?

We have carefully examined all the rulings of the court below assigned for error, and it is very difficult to say that any one or more of them was really the cause of this erroneous verdict or finding of the jury.

On the trial the plaintiff was examined as a witness in his own behalf, and upon his examination-in-chief he testified, among other things, that he was acquainted with the value of real property in the vicinity of his lots at the time when said railroad track was constructed in the alley, and that it was his opinion that immediately before said railroad track was constructed his property was worth $10,000, and that immediately afterward it was worth only $6,000, and that the depreciation of the value of his property by reason of the construction of said railroad track in the alley was $4,000. Afterward, upon the cross-examination of the plaintiff by counsel for the defendant, he was asked the following questions:

"What would be the value of a strip of ground fifteen feet wide taken from the south end of these lots, around on the east end out to Main street; beginning at Tenth street, take a strip fifteen feet wide off; then again from the south, north on the east side out to Main street?"

"What in your opinion would be the depreciation in the value of the remaining property, as an entirety, by reason of the taking from them fifteen feet off of the south end of the lots and fifteen feet off the side of the property to Main street?"

These questions were each objected to by the plaintiff, and the court below sustained the objections, and the evidence was excluded. Was this error? We would think that the defendant railroad company had a right to show, if it could, that when the alley was obstructed the plaintiff might have made a roadway fifteen feet wide all around his lots, except in front and on the west side where streets are located, and thereby made his lots — except for the amount of land thus

appropriated for his roadway—about as valuable as they were before the alley was obstructed; and if so, we would think the questions were certainly proper on the cross-examination of the plaintiff. The testimony of the plaintiff given on his examination-in-chief, with respect to damages, was merely made up of opinions concerning the value of his property before and after the construction of the railroad track, and such evidence is never regarded as of very great value. It is perhaps about as good as can be obtained in such cases, but everyone knows that different persons' opinions with respect to the value of property differ very greatly, and there were but very few (if any) sales of property similarly situated as the plaintiff's property, and but very few sales of property of any kind in that vicinity, from which the market value of the property could be ascertained. The evidence was purely opinion evidence, with but very little upon which to found the opinions. Hence the greatest latitude in the cross-examination of each witness giving such evidence should have been allowed. Nearly all the testimony in the case with respect to the plaintiff's damages was similar to that already mentioned, given by the plaintiff himself, and upon this kind of evidence the jury evidently based their verdict. Now after the introduction of this kind of evidence, and the refusal of the court to permit the defendant to cross-examine the witness as the defendant desired, the jury may have believed, and probably did believe, that they were to take into consideration all damages and losses sustained by the plaintiff, both general and special—not only those which were peculiar to the plaintiff himself, but also all which he suffered in common with all the rest of the community in that vicinity. The jury may have believed, and probably did believe, that the plaintiff was not only entitled to recover damages for the loss of his easement, his right to pass and repass over the alley to and from his premises, but that he was also entitled to recover damages for the loss of the fee of the alley, the land itself, and for the

loss of all the general benefits which might in any manner result to him by reason of having a public alley south of his lots through which the general public could travel. The jury probably believed that in awarding damages to the plaintiff they were not to consider at all the mere question of the value of a private roadway to the south end of the plaintiff's property, but that they were to consider the absolute value of the alley the same as though it belonged absolutely to the plaintiff, fee and all, and in all its extent, both in length and width, and this is probably why the jury awarded as large an amount of damages to the plaintiff as they did. They probably did not consider that all the lot-owners, as well as the general public, had an interest in the alley as well as the plaintiff; and the fact that the court limited the cross-examination of the witness as it did, probably gave to the jury this impression. Taking this view of the case, the error of the court below in restricting the cross-examination of the plaintiff as a witness was a material error. This is one of the cases, as we have before intimated, in which great latitude in the cross-examination of witnesses should be allowed. We think the court below erred in restricting it. (See *M. K. & T. Rly. Co. v. Haines,* 10 Kas. 439.)

The judgment of the court below will be reversed, and the cause remanded for a new trial.

BREWER, J., concurring.