**MURRAY v. MORRIS.    (No. 3138.)***

' Court of Civil Appeals of Texas.    Amarillo.
Dec. 12, 1928.

Rehearing Denied Jan. 9, 1929.    Writ of Error Dismissed for Want of Jurisdiction
May 22, 1929.

Wilson & Randal and J. I. Kilpatrick, all of Lubbock, for appellant.

Lockhart, Garrard & Brown, of Lubbock, for appellee.

JACKSON, J.    This suit was instituted in the district court of Lubbock county, Tex., by Mrs. Lulu Morris, a feme sole, against the appellant, R. J. Murray, to recover the sum of $5,000 damages for the alleged breach of a written contract, by the terms of which appellant agreed to exchange certain lands to appellee for certain city property.

Appellee alleges that she was the owner of lots Nos. 16, 17, and the N. ½ of 15, in block

*Writ of error dismissed.

No. 178, in the original town of Lubbock, Tex., and said property was incumbered for the sum of $5,000; that appellant was the owner of the N. E. ¼th of section 4, block 3, in Lubbock county, Tex., containing 159 acres, incumbered for a greater amount than $5,000; that appellant and appellee, about February 10, 1927, entered into a written contract for the exchange of said properties; that, by the terms of said contract, appellant was to accept appellee's lots with said incumbrance of $5,000 against them, and appellant was to reduce the incumbrance against his land to the sum of $5,000, and appellee was to accept said land incumbered in the sum of $5,000 in exchange for her lots incumbered in a like amount.

She alleges that the lots and premises she agreed to sell and convey to appellant was of the market value of $10,000, and the land that appellant agreed to sell and convey to her was of the market value of $15,000; that she complied with all the terms and conditions imposed on her by said contract, but that appellant failed and refused to reduce the incumbrance against his said land to the sum of $5,000, and failed and refused to comply with the terms and conditions imposed upon him by said contract and breached the same, to appellee's damage in the sum of $5,000.

The appellant answered by general demurrer, general denial, and alleged that the contract entered into between him and appellee provided that, if either party to said contract should be unable to make such title as the contract called for within a reasonable time, the contract should be of no further force and effect; that at the time of the execution of the contract his land was incumbered for the sum of approximately $12,000, of which appellee was fully informed; that, although he exercised reasonable diligence, he was unable to secure a release of the indebtedness against his land in excess of $5,000, and was unable to reduce the incumbrance against his land to the sum of $5,000, and was therefore unable to carry out his said contract.

In response to special issues submitted by the court, the jury found, in effect, that R. J. Murray could have, by the use of reasonable diligence, reduced the indebtedness against his land to the sum of $5,000, as he contracted to do; that the sum of $12,000 was the reasonable market value of the lots and premises owned by appellee; that $87.50 per acre was the reasonable market value of the land owned by appellant. On these findings the court rendered judgment in favor of appellee and against appellant in the sum of $1,912.50, with interest thereon at the rate of 6 per cent. per annum from date of judgment, and costs, etc. From this judgment, this appeal is prosecuted.

The appellant, by proper assignments, presents as error the action of the court in permitting the appellee to testify that her property was of the market value of $10,000, over the objection that she had not qualified; in refusing to permit counsel for appellant to ask the appellee on cross-examination, after she had so testified, whether or not the house on the lots had cost $13,000 or $14,000; in refusing to permit counsel for appellant to ask the appellee, after she had admitted that about the time of the contract with appellant she had applied for a loan, whether or not she had told the man to whom she applied for the loan the house had cost her $13,000 or $14,000; in refusing, after appellee had denied that she had at any time listed her property with any agent for sale, to allow the witness T. W. Sawyer to testify that appellee had listed her lots, and the improvements thereon, with him in the summer or fall of 1926, for the sum of $13,500.

The objection made to the testimony excluded is that it was irrelevant and immaterial and not the way to prove market value. The appellee, Mrs. Morris, while on the stand in her own behalf, testified that she had lived in Lubbock for five or six years and made no special effort to keep in touch with values of land or city property; that she had not tried to sell her property and would not say what she could have gotten for it, but that she had an idea what the reasonable market value of her property was; that she was not in the real estate business, but in a general way she kept up pretty well with prices of town property, and that the market value of her property was about $10,000; that, about the time she made the contract with appellant for the exchange of their properties, she applied to Mr. McAfee, of Lubbock, Tex., for a loan on her property; that she denied having ever listed her property for sale at any time with any real estate agent.

■■ Permitting the appellee to testify to the market value on the showing made of her qualifications was largely in the discretion of the trial court and the objection would probably go to the weight rather than the admissibility of her testimony. However, the exclusion of the testimony offered by appellant on cross-examination of appellee constituted reversible error. In Pecos & Northern Texas Ry. Co. v. Porter, 156 S. W. 267, Judge Hall of this court, says:

"The purpose of a cross-examination is to sift and to modify and have the witness explain what has been said on his direct examination, and if the witness by this process can be discredited and the weight of his testimony weakened, the right should not be denied.

" 'The benefit of cross-examination is an essential condition to the reception of direct testimony. That is to say, testimony is not admissible if the party against whom it is to be used or those in privity with him have no opportunity of cross-examining the witness. The right being a substantial and a very im-

portant one, it is error to restrict it so far as to prevent the cross-examining party from going fully into all matters connected with the examination in chief.' Thompson on Trials (2d Ed.) § 406.

"The author, quoted further, says:

" 'A witness may be cross-examined as to his examination in chief in all its bearings and as to whatever goes to explain or modify what he has stated in his examination in chief, and prejudice will be presumed where this right is denied.' Martin v. Elden, 32 Ohio St. 282.

" 'Where a witness has on his examination in chief given his opinion as to value, he may be cross-examined in full respecting his reasons for such opinion, and here the rule applies that great latitude should be allowed in cross-examination.' Mo., etc., Ry. Co. v. Haines, 10 Kan. 439; C., B., etc., Ry. Co. v. Andrews, 30 Kan. 590, 2 P. 677; Markel v. Moudy, 13 Neb. 323, 14 N. W. 409; Buck v. City of [Boston], 165 Mass. 509, 43 N. E. 496.

"This question has also been considered and the rules above announced followed by our state courts in the following cases: P. & G. Ry. v. Kirby, 42 Tex. Civ. App. 340, 94 S. W. 173; Kirby v. P. & G. Ry., 39 Tex. Civ. App. 252, 88 S. W. 281; M., K. & T. Ry. Co. v. Rich, 51 Tex. Civ. App. 312, 112 S. W. 114; Dittman v. Weiss [Tex. Civ. App.] 31 S. W. 67; Ft. W. & D. C. Ry. Co. v. Travis, 45 Tex. Civ. App. 117, 99 S. W. 1141." See, also, Eastern Texas Ry. Co. v. Scurlock, 97 Tex. 305, 78 S. W. 490; Edwards v. Osman, 84 Tex. 656, 19 S. W. 868.

The appellant urges as error the action of the trial court in first excluding the testimony of M. J. Stubbs as to the market value of the land that appellant had contracted to convey to appellee, on the objection that he was not qualified, and stating, in sustaining the objection:

"It strikes me that here is a witness that all he knows about it is he owns that farm out there and what value he places on it would not have any more weight than anybody else. He has got to place his value on something, his knowledge of the value, his experience in selling property, or something."

Notwithstanding, after further questioning, the witness was allowed to testify as to the market value of the land. Both the ruling of the court and his remarks were excepted to, because the witness had shown himself qualified and that the remarks of the court in the presence of the jury regarding the testimony of the witness tended to discredit the witness and to impeach his testimony and prejudice it in the minds of the jury and thereby injure appellant.

"On the trial of all cases the judge should preside with impartiality, and in a trial before a jury, who are the sole judges of the credibility of witnesses and the weight to be given their testimony, he should be especially careful to say or do nothing which would be calculated to influence their minds in regard to facts in issue, the solution of which it is their duty to determine." Hargrove v. Ft. Worth Elevator Co. (Tex. Civ. App.) 276 S. W. 426.

The court's statement in effect that in his opinion all the witness knows about the farm is that the witness owns it and the value that he places on it would have no more weight than the testimony of any one else is clearly a comment on the credibility of the witness and the weight of his testimony, and in our opinion constitutes reversible error.

What has been said is, we think, sufficient to dispose of the other assignments of error urged by appellant as to the action of the court in admitting and in excluding testimony; hence such assignments will not be discussed in detail.

The appellant presents as reversible error the conduct of the jury while deliberating upon their verdict. Without going into the testimony in detail as to what occurred in the jury room, it is sufficient to say that the testimony tends to show that the jurors, in arriving at their verdict, sought to place such a value on the property of appellee and such a value on the property of appellant as would allow the appellee to recover about $2,000. It was the duty of the jury to find from the testimony the value of each piece of property, regardless of the effect that the values placed on the properties would have on the amount of the recovery. The testimony also raises a doubt as to whether or not one or more of the jurors were influenced by the discussion in the jury room relative to the amount the appellee would have to pay in attorney's fees, which was suggested to be one-half of the recovery. The question of the misconduct of jurors has been so frequently discussed by the courts and the rules and principles controlling their conduct so fully announced, it is unnecessary to enter into a lengthy discussion of this assignment. Moore v. Ivey et al. (Tex. Com. App.) 277 S. W. 106; Great West Mill & Elevator Co. v. Hess (Tex. Civ. App.) 281 S. W. 234.

"It is the settled law of this state that, " 'If, upon a consideration of the whole or the pertinent record, it is reasonably doubtful whether or not the improper conduct affected the amount of the verdict or the decision of any other material issue, the verdict should be set aside by the trial judge; if, in such a case, a new trial is not granted, there is an abuse of the discretion by the trial judge, and reversal becomes the duty of appellate courts.' " International-Great Northern Ry. Co. v. Cooper (Tex. Com. App.) 1 S.W.(2d) 578, and authorities therein cited.

For the errors discussed, the judgment is reversed, and the cause remanded.