## MACHAELIS et al. v. PREDDY et al.
### (No. 8954.)

Court of Civil Appeals of Texas. Galveston.
April 7, 1927.

**1. Landlord and tenant ⟨⟩22(4)—Complaint alleging agreement to lease sole theater in town, in reliance on which plaintiff purchased theater business, and defendants' breach requiring plaintiff to pay bonus for premises to protect investment, stated cause of action.**

Complaint, alleging that owner of sole available theater building in town had promised to lease building to plaintiffs after expiration of present lease in return for plaintiffs' agreement to pay what lessor thought lease was worth, that plaintiffs in reliance thereon purchased theater business, and that defendants wrongfully refused to perform contract and leased to third party, to whom plaintiffs were required to pay bonus to obtain building in order to avoid loss of investment, *held* to state cause of action.

**2. Landlord and tenant ⟨⟩22(1)—Agreement to pay whatever increased rent owner should think property worth supported agreement to lease.**

Prospective tenant's agreement to pay whatever increase in rent owner should think property worth for new term, *held* good consideration for owner's agreement to lease property to such prospective tenant at end of term covered by existing lease.

**3. Damages ⟨⟩141—Measure of damages need not be pleaded.**

Pleadings need not specifically allege measure of damages to be applied.

**4. Trial ⟨⟩144—Application of measure of damages is for court.**

Application of measure of damages to facts set out in pleadings and evidence is within province of court.

**5. Landlord and tenant ⟨⟩22(3)—Prospective tenants did not accept owner's action in leasing to third party as performance of contract to lease to them by taking over third party's lease to avoid financial loss.**

Persons to whom owner agreed to lease premises at expiration of term did not accept owner's action in leasing to third party as performance by taking over assignment of third party's lease, where such action was made necessary to avoid loss of business purchased on strength of owner's promise.

**6. Landlord and tenant ⟨⟩22(5)—On breach of agreement to rent sole theater in town, in reliance on which prospective tenant purchased theater business, tenant could recover difference between rent under contract and rent paid party to whom owner wrongfully gave lease.**

In action for breach of agreement to lease sole theater building in town in reliance on which prospective lessees purchased theater business, measure of damages for owner's wrongful act in leasing to third party was difference between amount of rent plaintiffs would

have paid owner and amount they were required to pay third party lessee from whom they rented in order to avoid loss of their investment.

**7. Appeal and error ⟨⟩1070(2)—Where jury answered all issues favorably to prevailing party, inadvertent requirement of affirmative answer to issue was not prejudicial.**

Alleged conflict between court's charge and verdict by reason of court's inadvertence in conditioning recovery on affirmative answer to issues, one of which should have been answered in negative, was not prejudicial, where jury answered all issues favorably to prevailing party.

Appeal from District Court, Matagorda County; M. S. Munson, Judge.

Action by James Preddy and others against H. Machaelis and others. Judgment for plaintiffs, and defendants appeal. Affirmed.

Styles & Erickson and W. D. Wilson, all of Bay City, for appellants.

GRAVES, J. Pursuant to a jury's verdict on special issues, appellees recovered $1,000 damages for the breach by appellant of a verbal contract to rent them the Grand Theater building in Bay City, Tex., for the year 1926.

The issues and verdict were to the effect that on January 12, 1925, appellants promised the appellees that at the expiration of the then existing lease on the theater building they would lease it to the appellees for the ensuing year (that is, 1926), that reliance upon such promise induced the appellees to buy the moving picture business, then in operation in that building, from Albert Miller, which they would not have done but for such promise, and that, in disregard thereof, appellants, on July 23, 1925, leased the premises over their heads to one Mollison for $175 per month for three years by written contract, which lease was duly recorded on the 31st day of July in the deed records of Matagorda county, Tex., and that such lease to Mollison damaged the appellees in the sum of $1,000.

Appellants assail the judgment under a large number of assignments and proposition, which may fairly be epitomized as follows:

First, the facts set forth in the appellees' pleadings fail to state a cause of action; therefore the general demurrer interposed should have been sustained.

Second, each and all of the special exceptions presented by appellants to the pleadings raising the following objections were good, and should have been sustained: (1) No valid consideration was alleged for the agreement declared upon; (2) the terms of the contract declared upon (that is, one to begin in the future) are incomplete and indefinite, in that it is not alleged just what appellees were to pay for the rental premises, and therefore no averment showing that they were damaged by

its breach; (3) no damage is shown from the further fact that the averments disclose the appellees to be holding the same premises under the Mollison lease thereon, which includes the same year, no inconsistency between the two contracts being alleged; (4) it appears therefrom that appellees, after knowing of appellants' breach of the contract in suit by issuing the Mollison lease in contravention of it, accepted the performance of the latter in substitution for, and thereby waived the breach of, the former; (5) a verbal contract for one year, stipulated to begin at a fixed time in the future, despite the excess of time over one year between its making and termination, is not within the statute of frauds, but is valid and superior to a written one by the same lessor to a third person.

Third, the court erred in overruling appellants' exceptions to its charge, to the effect that: (1) No proper measure of damages was submitted, in that it assumes that the overriding lease to Mollison was both a breach of contract with, and a measure of the consequent loss to, appellees, whereas their only possible damage was the difference between the reasonable market value of the leased premises for the year 1926 and what they agreed to pay therefor during that year; (2) it ignored the contingent or provisional promise on appellants' part to make the lease to appellees for the time designated; (3) special issues 5 and 6 therein are, in the manner and form submitted, immaterial, upon the weight of the evidence, and invasive of the jury's province.

Fourth, the facts failing to show legal grounds for a recovery, appellants' request for peremptory instruction should have been granted.

Fifth, there was error in the court's refusal to submit appellants' requested special issues 1, 2, and 3.

Sixth, the issues submitted and the jury's answers thereto are inconsistent; hence formed no proper basis for a judgment.

We conclude that none of these contentions can be sustained.

[1] The general demurrer was properly overruled, because the appellees alleged that they bought Albert Miller's picture show business in operation in this building, which was the only one in the town available for that purpose, in 1925 for $7,500, upon the express condition that they could obtain from appellants a continuation of the rental tenure for that purpose thereon for one year after Miller's lease upon it expired on January 1, 1926; that on January 12, 1925, after posting earnest money upon such purchase, they and Miller—

"met all of the defendants in the town of Bay City, in Brunner & Certling's store, whereupon plaintiffs informed all of the defendants of the contemplated contract of purchase of the said moving picture show by them from the said Miller, and asked the said defendants then and there if they could secure the lease on the said building, and if they (the defendants) would give them an option on the same at the expiration of Miller's lease on January 1, 1926, also informing defendants at the same time that they could not afford to take the moving picture business and pay out the great amount of money ($7,500) for the same unless they were sure of obtaining the said building, plaintiffs agreeing at the same time with and to the defendants that, if they desired a raise in the rents on the said building after January 1, 1926, whatever the defendants thought the lease to be worth they would be willing to pay; whereupon the defendants and all of them agreed to let the plaintiff have the building and enter into a written contract with plaintiffs at the expiration of said lease which expired January 1, 1926, for the consideration that plaintiffs show and pay the rents thereon monthly in the amount to be agreed on by the defendants after the 1st day of January, 1926, defendants agreeing that they could continue to occupy the said building right on, whereupon plaintiffs immediately paid the said Albert Miller the remaining $3,900 and took charge of the said moving picture show; and that they were induced to do so by the contract made with the defendants that they (the plaintiffs) were to have the building, and without said agreement with the defendants they would not and could not have afforded to have placed said large amount of money in the moving picture show, that it would have been at a great loss, and plaintiffs acted wholly upon the agreement made by the defendants on said date."

Then follow averments to the effect that appellants well knew the building was the only possibly available one for that business in Bay City; that appellees, in reliance upon this continuation agreement with them, took possession of and continued operating the picture show therein and paying them the rents due under Miller's lease thereon, whereupon appellants, without notice to, and in disregard of, appellees' rights, made the above-mentioned lease to Mollison; that, on being at once after the recording of their lease to Mollison accosted about the matter, appellants, although being then advised and well knowing that such lease over their heads would ruin appellees' business and cause the total loss of their investment, refused appellees any satisfaction or relief; that they thereupon approached Mollison, and he too declined to do anything unless they paid him the sum of $3,000 for the surrender of his contract, which they were compelled to and did do on July 30, 1925, in order to protect their business from complete loss; that they were at all times not only ready, able, and willing to comply with the terms of this contract of theirs with appellants of January 12, 1925, but under it would have paid them the $175 per month for the building that Mollison was to pay under the written lease to him, and—

"that, by reason of defendants failing and refusing to do and perform their said contract with the plaintiffs, and by reason of defendants

willfully and maliciously and with the intent to wrong and defraud plaintiffs, and injure their said business and force them to abandon the same by entering into said written contract with Mollison, and knowing the same would be placed of record, and knowing that Mollison would or could plead 'innocent purchaser' under the law, and thereby forcing and compelling plaintiffs to pay to said Mollison the sum of $3,000 as a bonus in order to obtain the building from him, thereby damaged plaintiffs in the sum of $3,000."

[2] These pleadings stated a good cause of action; the gravamen of the charge being that appellants, by their breach of the prior oral contract to lease to appellees, left the latter no alternative than to pay what Mollison exacted in order to prevent the entire loss of the investment appellants agreed they might make with Miller in reliance upon getting another year's tenure of the building; neither was there failure to state a consideration and a price, there being both a detriment to appellees and an advantage to appellants, in the stated obligation of the former to utilize the property for the term, and pay the latter therefor whatever raise in price over $125 per month they might think it worth.

[3, 4] It was unnecessary for appellees to specifically plead their measure of damages; they set up all the facts, and it was the province of the court to apply the proper measure. Ara v. Rutland (Tex. Civ. App.) 172 S. W. 993; Stevenson v. Smith, 28 Cal. 102, 87 Am. Dec. 107; Peshine v. Shepperson, 17 Grat. (Va.) 472, 94 Am. Dec. 468.

For a like reason also there was no error in the refusal of the peremptory instruction requested; there was sufficient evidence to sustain the jury's findings upon the essential facts thus alleged, as the same were embodied in the special issues previously summarized.

[5] The reasons given for holding the general demurrer ineffective are equally good against the special exceptions, as our résumé of the appellees' pleadings has demonstrated; a valid consideration, as well as what appellees were to pay for the year's lease—that is, whatever increase over the rent Miller had been paying appellants thought the property worth for the new term—was alleged; appellees did not accept performance from appellants of the lease to Mollison in substitution for the contract for one year of the same time with themselves, but were forced to pay him $3,000 to avert the disastrous consequences to their interests that appellants' act in so leasing to him had made imminent, thereby disclosing a definite and material damage.

[6] Neither are the objections to the court's charge well taken, we think. Upon the measure of damages, this direction was given:

"In connection with the special issues hereinafter submitted, you are instructed that, if you answer special issues Nos. 1, 2, 3, 4, and 5 'Yes,' then you are instructed that the measure of damage would be the difference between the amount of rent to be paid by plaintiffs to defendants for the lease of the Grand Theater building for the year 1926 under said agreement with defendants and the amount which plaintiffs are required to pay for the said premises for the said year under the assignment of lease contract to plaintiff from Mollison."

We are not prepared, under the developed facts of the case to hold this charge erroneous. It expressly limited the damage to the excess for 1926 that appellants' wrongful act had directly forced appellees to pay over what would have been required had appellants lived up to their contract with them. The jury found that excess to be $1,000, and no successful attack is made upon the finding. Nothing short of this would have made them whole, and, in the peculiar circumstances, market value of the leasehold for that year did not furnish the proper standard. The wrongdoers could not be heard to say, in the face of the undisputed fact that their act directly compelled the victims of it to pay this unusual loss, that they still were remitted to the ordinary rule.

[7] The other objections to the charge, not already in effect disposed of, are without merit; the conflict cited as existing between it and the verdict was merely an obvious inadvertence on the court's part in the quoted instruction on the measure of damages in conditioning its application upon the jury's answering "Yes" to all five of the special issues, when it should have included all except No. 4, which inquired whether appellees would have bought the picture show business from Miller had not appellants promised them a year's continuation of his lease. What the court unmistakably meant was to direct the giving of damages only in event these special issues were answered favorably to appellees. The jury rightly so understood the matter, answered No. 4 "No," and the court properly refused to set aside their verdict.

Appellees did not avail themselves of their privilege of aiding this court in the disposition of the cause by filing a brief.

The judgment has been affirmed.

Affirmed.