■ The general manager of the elevator, Boothe, should have been permitted to testify as to the authority of the defendant's bookkeeper, Caudle.

■ E. M. Carter should not have been permitted to testify, over defendant's objection, that the wheat was delivered under the terms of the contract.

Because the case seems to have been tried upon the mistaken theory that because the wheat was the property of the Carters, the Galts could convey no title by their sale of it to the defendant company, and this without regard to the question of notice, we have concluded that the proper disposition to make of the case is to reverse the judgment and remand the cause for another trial.

Reversed and remanded.

**McDANIEL BROS. et al. v. WILSON et al.**
No. 2545.

Court of Civil Appeals of Texas. Beaumont.
April 12, 1934.

Rehearing Denied May 2, 1934.

A. L. Calhoun and David C. Marcus, both of Beaumont, for appellants.

Sonfield & Sonfield, of Beaumont, for appellees.

WALKER, Chief Justice.

This suit was originally filed on October 12, 1928, by E. E. Wilson and Mrs. Maude W. Littleton, joined pro forma by her husband, Martin W. Littleton, individually and as independent executors of the estate of Mrs. Minnie G. Starke, deceased, against McDaniel Brothers, a partnership composed of C. H. and Howard McDaniel, and C. H. and Howard McDaniel individually, and E. L. Wilson Hardware Company, a corporation, and Lumberman's Reciprocal Association, to recover damages for an injury to a brick building owned by them in the city of Beaumont, Jefferson county. E. L. Wilson Hardware Company filed a cross-action against McDaniel Brothers and C. H. McDaniel and Howard McDaniel, and also brought in the Southern Surety Company of New York as a new party on the cross-action. The Lumberman's Reciprocal Association was dismissed from the suit.

Appellees, plaintiffs below, own the lot, and brick building situated thereon, adjacent to a lot owned by appellant E. L. Wilson Hardware Company in the city of Beaumont. E. L. Wilson Hardware Company wrecked the building situated on its lot, and appellants McDaniel Brothers, as independent contractors under E. L. Wilson Hardware Company, made the excavations on its lot, required for the erection of a new building. The retaining wall built by McDaniel Brothers to protect the embankment wall adjacent to appellees' lot gave way, resulting in the damages to appellees' building, upon which this suit is predicated. On the jury's verdict, appellees were awarded judgment against appellants McDaniel Brothers, individually and as members of the partnership, and E. L. Wilson Hardware Company, jointly and severally, for the sum of $5,325. A former appeal of this case is reported in McDaniel Bros. v. Wilson (Tex. Civ. App.) 45 S.W.(2d) 293, to which we refer for a more detailed statement of the facts.

In answering special issues 17, 18, and 19, the jury found that appellants entered upon appellees' property and loosened, displaced, and disturbed the earth and material supporting the walls of appellees' building; that this constituted negligence on the part of appellants, and was a proximate cause of the injury to appellees' building. The following statement supports and shows the materiality of these findings: Appellees alleged as follows: "That said defendants entered and trespassed upon the land and premises of plaintiffs, loosening, displacing and disturbing the earth and materials supporting the walls of plaintiffs' building, causing the foundation to be exposed to the rain and the elements and weakening the same." There was between the old building of the E. L. Wilson Hardware Company, demolished to make way for the new building, and the building of appellees, an alleyway about 8½ feet wide, owned jointly by the E. L. Wilson Hardware Company and appellees. The alleyway prior to construction was paved with concrete. All of the paving in the alleyway, including the part of the alleyway belonging to appellees, was removed, and thereafter, while the Wilson Hardware Company lot was being excavated, there were heavy and continuous rains in the city of Beaumont. Mr. Mauer, an architect, witness for appellees, testified that the rains "softened" the alleyway, causing it to "slip"; that this condition added materially to the pressure on the sheath piling protecting the walls of the excavation adjacent to appellees' building and had a tendency to "shove" it in; that if the concrete had not been removed from the alleyway, the water would not have gotten under the foundation of appellees' building; that through the removal of the concrete from the alley-

way, the water, saturating and softening the soil under the foundation and loosening the foundation, added materially to the pressure on the sheath piling; and that the weight of the building had a tendency "to assist in the damage." The testimony of this witness raised the issue that the removal of the concrete was a proximate cause of the injury to appellees' building. Appellant McDaniel, one of the contractors, testified that, at the time they were making the excavation, there was a great deal of rain. Questioned as to the effect of the rain on the soil in the alley between the Wilson building and the building of appellees, he answered: "All of the soil was saturated with water." Mr. Echles, a witness for appellants, testified that the saturation of the soil underneath appellees' building had a great effect "in assisting or causing the earth to slip and bulge out toward the excavation"; that it was an important factor in causing the earth to move. The evidence of Mr. Mauer was given prior to that of appellant McDaniel and appellants' witness Echles. Neither of them disputed the evidence of Mauer that, but for the removal of the concrete from the alleyway, the rainfall would not have contributed to the injury to appellees' building.

▬ Our courts define a "trespasser on land" as one who, not having title thereto, without consent of the true owner, makes entry thereon. Pilcher v. Kirk, 55 Tex. 208; Jones & Nixon v. Bank (Tex. Civ. App.) 140 S. W. 116, 117; Hensley v. Conway (Tex. Civ. App.) 29 S.W.(2d) 416. Under the rule announced by 63 C. J. 895, every unauthorized entry upon land of another is a trespass even if no damage is done or the injury is slight, and gives a cause of action to the injured party. "It is immaterial that the entry was made in the course of defendants' operations on adjoining land, although to prevent injury to plaintiffs' property or under bona fide claim of right." It is also the law that liability for trespass is not dependent upon personal participation. One who aids, assists, or advises a trespasser in committing a trespass is equally liable with him who does the act complained of. 63 C. J. 931; Wetzel v. Satterwhite, 59 Tex. Civ. App. 1, 125 S. W. 93. The trespasser is also liable without reference to negligence. 63 C. J. 889; Wetzel v. Satterwhite, supra; Steger v. Barrett, 58 Tex. Civ. App. 331, 124 S. W. 174. Also the intent or motive prompting the trespass is immaterial. 63 C. J. 589.

▬ It was shown, both by the pleadings of appellants and the uncontradicted evidence, that the trespass upon the jointly owned alleyway was incident to, involved in, and a part of, the contract between McDaniel Brothers and E. L. Wilson Hardware Company; and the findings of the jury were that the defendants, which finding included E. L. Wilson Hardware Company, committed the trespass. These issues were not excepted to, nor is the jury's finding of joint trespass assailed by propositions or assignments of error. Under this statement, the fact that McDaniel Brothers were independent contractors does not relieve E. L. Wilson Hardware Company of liability for the trespass committed by McDaniel Brothers. A well-supported exception to the general rule of nonliability of the employer for the acts of his independent contractor is thus stated in 23 Tex. Juris. 567: "When work was done in the manner and by the means contemplated in the contract, and the contractor has performed strictly as directed, the employer cannot escape liability under the plea that the work was placed in charge of an independent contractor." See, also, Scoggins v. Cement Co., 179 Ala. 213, 60 So. 175; annotation 21 A. L. R. 1233; Upton v. Townend, 17 C. B. 71; 139 Eng. Reprint 994; Kampmann v. Rothwell, 101 Tex. 535, 109 S. W. 1089, 17 L. R. A. (N. S.) 758; Robbins v. Chicago City, 4 Wall. 678, 18 L. Ed. 427. See generally annotations in 21 A. L. R. p. 1229. The facts of this case clearly bring E. L. Wilson Hardware Company within this exception to the general rule, making it jointly liable with McDaniel Brothers for the damages proximately resulting from the trespass upon the jointly owned alleyway. The findings of the jury on the issue of trespass constitute a cause of action in appellees' favor for the damages sued for.

▬ Under the verdict of the jury convicting appellants of trespass, appellees' proper measure of damages was the difference in the market value of their building immediately before and immediately after the injury. The rule is thus stated in 63 C. J. 1047 under the subject "Trespass": "As in other tort actions, the general rule is that the measure of damages in trespass actions is such sum as will compensate the person injured for the loss sustained." This issue was sent to the jury by question No. 24, as follows: "What was the difference in the reasonable market value of plaintiffs' property immediately before and immediately after the injury, if any, thereto? Answer by giving the amount in dollars and cents." To this question the jury answered: "$5,000.00." Answering question

No. 25, which was as follows, the jury found an additional sum of $325: "What sum of money, if any, do you find from a preponderance of the evidence was reasonably necessary to be expended by plaintiffs for the service of architects in the preparation of plans for, and the supervision of repairs to the plaintiffs' building? Answer by giving the amount in dollars and cents." We agree with the contention of appellants that the item of $325 was necessarily included in and a part of the jury's answer to question No. 24, and that appellees should not have been given judgment, as was done, for this additional item.

■■ We overrule appellants' contentions that question No. 24 was without support in the pleadings and the evidence. Appellees pleaded fully their cause of action, the trespass of appellants upon the jointly owned alleyway, the destruction of the concrete pavement, the removal of the soil and material, etc., the weakening of the foundation of their building, the different negligent acts of appellants in making the excavations, the amounts expended by appellees in the necessary repairs to the building as a result of the injury, and that in addition to the cost of the repairs the building "has been damaged generally and permanently to the extent of the sum of $5,000.00." Appellees prayed for the recovery of the damages stated in their petition and also for general relief. The following principle of law, announced by 13 Tex. Jur. 314, supports appellees' pleadings against this assignment: "It is not a general requisite of good pleading that a petition allege a measure of damages; and it is therefore held to be immaterial that the plaintiff has not alleged the proper measure. All that is required is that the petition allege facts which are essential to a cause of action, and from which the court can determine the measure. Where the facts are set up in the pleadings, and the cause of action as alleged is supported by the evidence, the measure is a matter of law for the court, and it becomes the duty of the court to inform the jury, or, in the absence of a jury, to apply the proper measure." The proposition of law thus cited is well supported by the following authorities: Monzingo v. Jones (Tex. Civ. App.) 34 S.W.(2d) 662; Machaelis v. Preddy (Tex. Civ. App.) 295 S. W. 305; Morgan v. Steinberg (Tex. Civ. App.) 23 S.W.(2d) 527, 533; Tokio Marine & F. Insurance Company v. Aldridge (Tex. Civ. App.) 21 S.W.(2d) 547; Dallas Railway & Tr. Company v. Bankston (Tex. Civ. App.) 33 S. W.(2d) 500; Capitol Hotel Company v. Rittenberry (Tex. Civ. App.) 41 S.W.(2d) 697; Campbell v. Johnson (Tex. Civ. App.) 284 S. W. 261.

■■ The issue submitted by question No. 24 was also raised by the evidence. Appellee Dr. Wilson was the principal, if not the only, witness offered by appellees on the issue of damages to their building. Dr. Wilson testified that he knew of the location of the building, its use, condition, and its value, and the value and condition of contiguous property; he testified unequivocally that he knew the market value of this building. In City of Waco v. Roberts (Tex. Civ. App.) 12 S. W.(2d) 263, 264, the court said: "The rule seems to be well established that where a witness states positively he knows the market value of the property in controversy, he thereby prima facie becomes qualified to testify as an expert, and his testimony is admissible as such. Foster v. Burgin (Tex. Civ. App.) 244 S. W. 244, and authorities there cited." The rule thus stated is well supported by the following additional authorities: 19 Tex. Jur. p. 85, § 59; Fort Worth & D. C. R. Co. v. Hapgood (Tex. Civ. App.) 210 S. W. 969; Central State Bank v. Henderson (Tex. Civ. App.) 286 S. W. 518 (writ of error dismissed); Houston L. & P. Co. v. Daily (Tex. Civ. App.) 291 S. W. 317 (writ of error dismissed); Fort Worth & D. S. P. Ry. Co. v. Judd (Tex. Civ. App.) 4 S.W.(2d) 1032 (writ of error dismissed); Murray v. Morris (Tex. Civ. App.) 17 S.W.(2d) 110 (writ of error dismissed). On the authorities cited Dr. Wilson was qualified to testify on the issue of market value.

■ The principal question involved in this particular assignment against question No. 24 relates to the weight and admissibility of Dr. Wilson's testimony on the measure of damages. He testified that the market value of the building immediately before the injury was $100,000. There is no assignment against this testimony. He estimated the market value of the building after the injury by taking from the $100,000 the reasonable cost of necessary repairs, fixed by him in the sum of $2,509.63, and the difference between the market value of the building immediately before the injury and immediately after the repairs had been made, which he estimated at $5,000. He was qualified to give this testimony. The difference between the value before injury and immediately after the repairs were made did not fully indemnify appellees. The reasonable cost of necessary repairs was a proper element of recovery. Union City Transfer Co. v. T. & N. O. Ry. Co. (Tex. Civ. App.) 55 S.W.(2d) 637;

Chicago, R. I. & G. Railway Co. v. Zumwalt (Tex. Com. App.) 239 S. W. 912. Had the repairs fully restored the building, their cost would have been the measure of recovery; but since the repairs did not fully restore the building, their cost, being reasonable and necessary, was a proper item of recovery, in addition to the depreciation in the value of the building. .

◼ The court gave the following definition of "new and independent cause" as part of its definition of "proximate cause": "A 'new and independent cause' is an intervening efficient force which breaks the causal connection between the original wrong and the injury. Such new force must be sufficient of itself to stand as the cause of the injury, and be one but for which the injury would not have occurred. The term 'new' refers to and means a cause incapable of being reasonably foreseen by the original wrongdoer by the use of ordinary care on his part; and the word 'independent' refers to and means the absence of the relation of cause and effect between the new cause and the original wrongful act or omission, and unless the intervening cause is thus both new and independent, sufficient of itself to stand as the cause of the injury, breaking the causal connection, the original wrongdoer is not relieved from legal responsibility for his wrong or negligence." On authority of Rio Bravo Oil Co. v. Matthews (Tex. Civ. App.) 20 S.W.(2d) 342; Vilbig & Co. v. Lucas (Tex. Civ. App.) 23 S.W.(2d) 516; West Texas Tr. Co. v. Hash (Tex. Civ. App.) 43 S.W.(2d) 152, we overrule appellants' assignment that the court erred in refusing to define the term "natural and continuous sequence," as used in the definition of new and independent cause.

◼ We also overrule the assignment that the court erred in refusing to define the term "intervening efficient force," as used in the definition of new and independent cause. The assignment is not that the court erred in the definition given, but in refusing to submit a definition. We think the term was sufficiently defined. The court said: "A 'new and independent cause' is an intervening efficient force which breaks the causal connection between the original wrong and the injury." Had the court said, "A new and independent cause is an intervening efficient force, by which is meant a force which breaks the causal connection between the original wrong and the injury," there could be no question that "intervening efficient force" was defined. The language used by the court constituted a definition as effectually as if it had been so

designated. Construing the definition given by the court as a whole, the language is so clear that there can be no question as to the technical meaning of this term thus submitted to the jury.

◼ The court did not err in refusing to submit to the jury the issue that the weight of appellees' building, "concurring and cooperating with the accumulation of moisture from the excessive rainfalls," was the sole proximate cause of any damages sustained by appellees. It follows because an affirmative answer to the question would not have constituted a defense. The "accumulation of moisture from excessive rainfalls" was an element of appellees' cause of action for trespass, and an affirmative finding on this question would not have been in favor of appellants but an additional ground of recovery for appellees.

◼ The court submitted the following issues of sole proximate cause:

"Special Issue No. Twenty-Eight. Do you find from a preponderance of the evidence that the weight of plaintiffs' building upon the soil at the time in question was the sole proximate cause of any damage to plaintiffs' property? Answer 'yes' or 'no,' as you find the facts to be."

"Special Issue Number 'B.' Do you find from a preponderance of the evidence that the accumulation of moisture in the soil underlying plaintiffs' building by reason of excessive rainfalls at the time in question was the sole proximate cause of the damage, if any, to plaintiffs' building?"

Appellant urges against these questions the following assignment of error: "The court erred in submitting Special Issue No. 28 and Special Issue No. B in such manner that the burden of proof as to said issues was placed on this defendant, because the burden of proof as to said issues was really on the plaintiffs and the placing of such burden on this defendant was erroneous and highly prejudicial to it." Being multifarious, this assignment should not be considered.

◼ The court did not err in refusing to submit to the jury the issue "as to whether or not the plaintiffs failed to take any steps to protect their property after ascertaining the manner in which the excavation work was being done, and if so, whether or not they were negligent in failing to do so, and whether such negligence proximately contributed to cause any damages sustained by plaintiffs." Appellants have no pleading sup-

porting the requested issue. In 13 Tex. Jur. 335, it is said:

"If the defendant wishes to contend that the plaintiff might have prevented or minimized the damage for which recovery is sought, he must set up the defense by special averments.

" 'The fact that by the exercise of reasonable diligence, after appellant's breach, the appellee might have minimized its damages in any way, is a matter which must be pleaded by the defendant in confession and avoidance, and evidence of any such fact is inadmissible under a general denial.' "

See, also, World's Special Films Corp. v. Fichtenberg (Tex. Civ. App.) 176 S. W. 733; Gildersleeve v. Hammond, 109 Mich. 431, 67 N. W. 519, 33 L. R. A. 46; Annotations in 50 A. L. R. 514.

It follows from what has been said that the judgment in favor of appellees is erroneous to the extent of $325, and that it should be affirmed in their favor by the elimination of that sum, which is accordingly our order.

Reformed and affirmed.

## On Rehearing.

■■■■ As a general proposition it is correct to say that cotenancy is a good defense to an action for trespass by the cotenant, but it is not a good defense where there has been an ouster; "nor is joint possession a defense where there has been a destruction of the property, or a misuse thereof." 63 C. J. 943, § 94. Appellees' cause of action was not based upon a mere entry and use of the alleyway for the purposes of its dedication, but as a ground of recovery they pleaded as follows: "That said defendants entered and trespassed upon the land and premises of plaintiffs, loosening, displacing and disturbing the earth and materials supporting the walls of plaintiffs' building, causing the foundations to be exposed to the rain and the elements, and weakening the same." The evidence fully sustained these allegations, thus bringing appellees' cause of action within the principles of the law of cotenancy as announced by Corpus Juris, supra.

In addition to the ground of trespass discussed in the original opinion, appellees also relied upon the ordinance of the city of Beaumont, discussed in the opinion on the former appeal; and also contended that, under the peculiar circumstances of this case, the common law imposed upon appellants the same duty to protect appellees' property as did the ordinance of the city of Beaumont;

it was also contended that E. L. Wilson Hardware Company was not released by the employment of independent contractors. Being satisfied with the disposition we have made of this case under the proposition of trespass, we pretermit a discussion of appellees' additional grounds of recovery.

Motion for rehearing overruled.